**\*NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COLLEEN HAND<br>*as Administratrix and Administratrix Ad Prosequndum of the Estate of Angela Bellifemini,*<br>*and Individually* | : : : : : : : | |
| Plaintiff, | : : | Civil Action No. 11-6350 (FLW) |
| v. | : : | **OPINION** |
| THE UNITED STATES OF<br>AMERICA, et al. | : : : : : | |
| Defendants. | : : | |

**WOLFSON, United States District Judge:**

      Defendants, the United States of America, United States Parole Office, United States Parole Commission, and the Federal Bureau of Prisons (collectively "the Government" or "Defendants") move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court does not have subject matter jurisdiction to hear this case because the Government is insulated from suit by sovereign immunity and that Plaintiff Colleen Hand ("Plaintiff" or "Hand") has failed to state a claim upon which relief can be granted. Plaintiff filed her Complaint on behalf of herself and as Administratix of the Estate of Angela Bellifemini ("Bellifemini" or "Decedent"). Her claims stem from Bellifemini's March 2009 murder, allegedly committed by Alexander Antoniades ("Antoniades"), who was under supervised release at the time of Bellifemini's death. Hand alleges that the Government was

1

negligent in its supervision of Antoniades, and in particular, that the Government should have informed the district court of Antoniades's violation of his supervisory release, and that such negligence contributed to Bellifemini's death. For the reasons that follow, Defendants' Motion is granted and Plaintiff's Complaint is dismissed.

## I. BACKGROUND

In general, when the Court addresses a Motion to Dismiss, it must accept Plaintiff's allegations contained in the Complaint as true. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). But as I explain below, where a defendant factually attacks the Court's subject matter jurisdiction, I may review the evidence to satisfy myself that I have the power to dispose of this matter. U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 512 (3d Cir. 2007). Thus, the facts recited below are taken from the Complaint when not disputed, otherwise they are taken from the certifications and submissions of the parties as indicated. Only the facts necessary to the disposition of Defendants' Motion are recited.

In late 2002, Antoniades pled guilty to armed bank robbery, and was sentenced to 41 months of imprisonment and 5 years of supervised release. Compl., ¶ 23. After serving his term of imprisonment in Missouri, he was released on March 24, 2004, and placed under the supervision of the United States Probation Office in Newark, New Jersey. Id. at ¶¶ 24-27.

Upon the commencement of Antoniades's supervised release, Maurine Rush-Blossfeld ("Rush-Blossfeld" or "Probation Officer") was assigned as Antoniades's probation officer. The initial supervision revealed that Antoniades suffered from multiple medical problems: advanced Hepatitis C, drug and sexual addictions, psychiatric compulsive disorder, and depression. Hengemuhle's Cert., Ex. A (the "Probation Chronological Record Report" or "Probation

Record") at 1 (attached to Def. Br., Dkt. No 5-2). Based on this information, Rush-Blossfeld provided Antoniades with a rehabilitation plan coordinated with Saint Michael's Medical Center that was tailored to Antoniades's particular circumstances including drug and mental counseling. Id. at 4. Rush-Blossfeld met with and telephoned Antoniades on a regular basis to assess and monitor Antoniades's progress with the plan; the plan worked successfully for about a year until Antoniades started to relapse. Id. at 17. Due to Antoniades's continued drug use, combined with his unstable mental condition, Rush-Blossfeld initially intensified the counseling program, but ultimately enrolled Antoniades in a residential drug treatment facility in August 2005. Id. at 19. During this time, Antoniades informed Rush-Blossfeld that he had a new girlfriend, who was later identified as Bellifemini. Id.

Then, in April 2006, Antoniades was arrested for possession of drug paraphernalia in Verona, New Jersey. Plaintiff's Sur-Reply, Ex. A ("Criminal History Report") at 2. He pled guilty to the charge and was sentenced to one year of probation. Id. On May 10, 2006, the arrest was reported to the district court where he had been sentenced. Probation Record at 55.[1] Due to Antoniades's critical mental condition, Rush-Blossfeld requested that the court take no action so that the she could work intensively on Antoniades's drug addiction issues. Id. at 57. The court agreed and took no further action. Id. Then, in February 2007, Antoniades was arrested for possession of crack cocaine in Newark, New Jersey. Plaintiff's Sur-Reply, Ex. A at 2. Antoniades pled guilty to this felony charge, and was sentenced to three years' probation. Id. On March 12, 2007, this arrest was reported to the district court. Probation Record at 79.[2] After this, Antoniades and Bellifemini disappeared for a week and Antoniades did not report in with

---

[1] In her Complaint, Plaintiff incorrectly alleges that this arrest was not reported to the court. Compl. ¶ 65. But Plaintiff abandoned that allegation in her papers.
[2] Again, Plaintiff incorrectly alleges that this arrest was not reported to the court. Compl. ¶ 78. Again Plaintiff has abandoned this allegation in her papers.

3

Rush-Blossfeld. When he finally did contact Rush-Blossfeld, Antoniades admitted that he and Bellifemini had been "holed up" in a hotel using heroin and cocaine. Id. at 75. This relapse was reported to the district court on June 19, 2007. Id. at 79. In July, after having been notified of the relapse, and on Antoniades's consent, the court modified the conditions of Antoniades's supervised release and confined him to his residence for three months while wearing an electronic monitoring device. Id.; Hengemuhle's Cert., Ex. C. Subsequently, Rush-Blossfeld issued a Violation of Supervised Release Report. Hengemuhle's Cert., Ex. D. This Report was based on the Newark arrest as well as the repeated substance abuse relapses and failure to answer inquiries truthfully about associating with a prostitute. At a hearing before the district court on February 1, 2008, Antoniades pled guilty to a violation of supervised release and was sentenced to an additional six months of electronically monitored home arrest, which started in February 2008 and continued until August. During this time, Antoniades continued to remain in an intensive medical monitoring program and complied with the terms of his release. Probation Report at 109.

Then, in October 2008, Antoniades was arrested for possession of drug paraphernalia in Bloomfield, New Jersey. Plaintiff's Sur-Reply, Ex. A at p. 2. He was found guilty of that offense and fined $405. Id. This arrest and conviction were never reported to the court as a violation of Antoniades's supervised release. During that month, Antoniades informed the Probation Officer that he broke up with Bellifemini. Probation Report at 110. However, it was later learned that he had participated in AA/NA meetings with Bellifemini, and he was repeatedly observed at a police station, in connection with Bellifemini's DWI arrest. Id. at 111, 114. Then on March 14, 2009, Antoniades was arrested for the murder of Bellifemini in Sussex County, New Jersey. Id. at 112.

4

Plaintiff seeks damages from the Government under the Federal Tort Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 1339. Plaintiff claims that the Government was negligent in supervising Antoniades's supervised release, and that such negligence was the proximate cause of the death of Bellifemini. In response, the Government has moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the discretionary function exception of the FTCA deprives the Court of subject matter jurisdiction, and that Plaintiff has failed to state a claim for Breach of Contract (Count XII).

## II. DISCUSSION

### A.  12(b)(1) Motion Standard

When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because if there is no subject matter jurisdiction, then the accompanying defenses become moot and need not be addressed. See Kerchner v. Obama, 669 F.Supp.2d 477, 480-81 (D.N.J. 2009) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). Accordingly, the Court turns first to Defendants' contention that this Court lacks subject matter jurisdiction over the instant action.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). No presumption of truthfulness is accorded to the plaintiff's allegations. Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir.1977)). The court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the

5

allegations in the pleadings and does so in the light most favorable to the plaintiff." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 509 (3d Cir. 2007). "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Id. at 514. A judicial challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." Id.

  In this case, Plaintiff claims that because the Government does not challenge the factual allegations asserted in the complaint, this Court must consider the Government's motion as a facial attack. This is not true, however, as the Government is attacking the factual contentions of whether certain arrests were reported to the court, what was the nature of Antoniades's conduct that led to those arrests, and what action, if any, the Probation Officer should have taken because of those arrests. Because of these facts, the Government contends that the discretionary nature of the decisions related to supervision would carve this case out of the reach of the FTCA, and therefore no subject matter jurisdiction exists.

  Given that this is the Government's contention, the Court finds that the instant motion is a factual rather than a facial attack. Moreover, the fact that both the parties have proffered numerous documents in support of their respective positions also leads this Court to conclude that the Government's attack must be construed as factual. See Med. Society of New Jersey v. Herr, 191 F.Supp.2d 574, 578 (D.N.J. 2002) (citing Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, 674 F.2d 700, 711 (3d Cir. 1982)) ("[W]hen a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the defendant's

6

challenge as a factual attack on jurisdiction"). As such, the Court will consider matters outside the complaint in its subject matter jurisdiction analysis.[3]

### B.     The Discretionary Function Exception to the FTCA

Plaintiff makes a number of arguments and asserts a number of counts in her Complaint, but each argument and count is a variation on her basic theory that the Government improperly handled Antoniades's supervised release and that this breach resulted in the death of Bellifemini. Plaintiff first alleges that the Government was negligent in permitting Antoniades to be on supervised release because his mental evaluation records demonstrated he was an "immediate threat to the well-being of the general public." Compl. at ¶ 31. It is not clear whether Plaintiff is maintaining this argument in the face of the Government's motion as Plaintiff does not respond to nor oppose the Government's arguments as to this claim. To the extent that the Plaintiff does still so allege, there can be no cause of action based on Antoniades being placed on supervised release because the sentence imposed by a judge is subject to absolute judicial immunity. See Mireles v. Waco, 502 U.S. 9, 9 (1991); Figueroa v. Blackburn, 208 F.3d 435, 439 (3d Cir. 2000).

The remainder of Plaintiff's allegations—which make up the bulk of her factual contentions and the entirety of her argument in opposition to the Government's motion—concern the alleged failures by Antoniades's Probation Officer to report certain violations of

---

[3] The Court recognizes that "when the merits and jurisdiction are closely related, a court may determine subject matter jurisdiction without reaching the merits, so long as the court demand[s] less in the way of jurisdictional proof than would be appropriate at a trial stage." Gould Electronics v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (determining that court lacked subject matter jurisdiction to hear indemnity claim under FTCA); see also CNA v. United States, 535 F.3d 132, 144 (3d Cir. 2008) (same). Considering that the discretionary nature of supervised release is a relevant issue both to the application of the discretionary function exception and the merits of Plaintiff's negligence claim, the Court will demand less jurisdictional proof from Plaintiff than required at trial, to the extent that the jurisdictional issue is intertwined with the merits of Plaintiff's claim.

Antoniades's supervised release to the court. In particular, Plaintiff alleges that Antoniades was arrested three times—the Verona arrest in April 2006, the Newark arrest in February 2007, and the Bloomfield arrest in October 2008—and that these arrests were not reported to the court. Plaintiff also alleges other violations that stem from these arrests, including: (1) the entry into the Conditional Discharge Program after Antoniades's Verona arrest; (2) Antoniades's indictment, plea of guilty, and sentence after his Newark arrest; (3) Antoniades's guilty plea and sentence related to his Bloomfield arrest. For purposes of this Court's subject matter jurisdiction analysis, the Court will not treat these events individually, but consider them concomitantly with the related arrests. It is the arrest and all the necessary incidents to an arrest about which Plaintiff complains. Moreover, Plaintiff does not dispute that two of the arrests—the Verona and Newark arrests—were in fact reported to the court and that after the Newark arrest, the district court modified Antoniades's supervised release and sentenced him to house arrest. Therefore, the only conduct that Plaintiff can rely on, and indeed, the only conduct on which Plaintiff relied in her papers, concerns the Bloomfield arrest for possession of drug paraphernalia on October 7, 2008, and whether the Probation Officer was negligent in not reporting it to the district court.

Before I can reach the merits of whether Plaintiff has indeed stated a viable cause of action, I must first resolve the threshold issue of whether such a suit can stand against the Government in the face of its sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government … from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). To overcome the Government's immunity, Plaintiff relies on the Federal Tort Claims Act ("FCTA"). The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and … to render the Government liable in tort as a private individual would be under like circumstances." Richards v. United States, 369 U.S. 1, 6 (1962). In short,

the FTCA waives the United States' sovereign immunity from suit for tort claims in limited situations. Specifically, subsection (b)(1) of the Act establishes jurisdiction in federal district courts for the negligence of any government employee if there is a state law cause of action. 28 U.S.C. § 1346(b); Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 281 (3d Cir. 1995). But because "the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." Livera v. First Nat'l State Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir. 1989). And the FCTA is not without its caveats and exceptions.

One such exception is that the FTCA does not waive immunity for a government employee's discretionary functions. In particular, the Act states that sovereign immunity "shall not extend to"

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); CNA v. United States, 535 F.3d 132, 150 (3d Cir. 2008) ("Section 2680(a) is an explicit exception to the FTCA's waiver of sovereign immunity"). The purpose of the "discretionary function" exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988) (quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984)). For the exception to apply, a court must determine both (1) whether the federal agency or employee's action was a matter of choice; and (2) whether the judgment involved in the choice was the type of judgment that was designed to be shielded. United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Mitchell v. United States,

225 F.3d 361, 363-64 (3d. Cir. 2000).  When a government employee takes discretionary action that is designed to be protected, and when the alleged negligence is based on that employee's act, there is a presumption that the act is grounded in that policy.  See Gaubert, 499 U.S. at 324.  The Third Circuit has held that once a plaintiff has demonstrated that a claim falls within the scope of the FTCA, "the United States has the burden of proving the applicability of the discretionary function exception."  Merando v. United States, 517 F.3d 160, 164 (3d. Cir. 2008) (citations omitted).  Lastly, because the purpose of the exception is to shield discretionary policy decisions from liability, the exception applies even when an employee's alleged acts are negligent.  Gaubert, 499 U.S. at 323 (citing Varig Airlines, 467 U.S. at 820).  In other words, because the statutory language says "whether or not the discretion involved [was] abused" the Court's analysis is limited only to determining if discretion was involved and if that discretion was based on policy.  Whether the employee abused his or her discretion or made choices that the court disagrees with is beyond the purview of the court's review.  The Gaubert Test thus focuses on the nature of a government agency's or employee's conduct, not on whether the conduct was negligent.  Id.

     The first prong of the Gaubert test is straight-forward.  The employee's action must neither be prescribed nor proscribed by any statute, regulation or established policy.  Id. at 322.  Otherwise, the action could not be considered a product of choice—and not discretionary—as "the employee ha[d] no rightful option but to adhere to the directive."  Berkovitz, 486 U.S. at 536.  As was explained by the Supreme Court in Gaubert:

> If a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation.  If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.  On the other hand, if a regulation allows

> the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

Gaubert, 499 U.S. at 324. Simply put, the employee must be allowed by statute, regulation, or policy, to have the discretion to engage in the act in question. See Mitchell, 225 F.3d at 363 (citing Gaubert, 499 U.S. at 322). A review of the relevant supervisory guidelines shows that the Probation Officer had discretion regarding whether to report Antoniades's Bloomfield arrest. That arrest was for possession of drug paraphernalia, which is classified under New Jersey law as a "disorderly persons offense." See N.J.S.A. § 2C:36-2 ("Any person who violates this section is guilty of a disorderly persons offense."). This charge constituted a Class C violation under the United States Sentencing Guidelines ("U.S.S.G."). U.S.S.G. § 7B1.1(a)(3) ("Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision."). These same guidelines provide that "a probation officer shall promptly report to the court any alleged [Class C] violations unless the officer determines (1) that such violation is minor, and not part of a continuing pattern of violations; and (2) that non-reporting will not present an undue risk to an individual or the public or be inconsistent with any directive of the court to the reporting of violations." U.S.S.G. § 7B1.2(b). Plaintiff does not dispute that this was the only charge not reported to the court. Rather, she argues first, that the Probation Officer had to review the alleged conduct at issue to determine whether it was indeed a Class C violation and second, that if it was a Class C violation, there is no evidence whether the Probation Officer made an affirmative determination that the violation was minor or what type of risk non-reporting might impose. While Plaintiff is correct there is no evidence in the record regarding these issues, that is immaterial. Plaintiff's arguments go to whether the Probation Officer abused her discretion in

11

not reporting the arrest, which is something the Court is prohibited from questioning.  If Plaintiff's Complaint is alleging that the Probation Officer failed to adequately assess and consider the Bloomfield arrest as a Grade C violation and that her decision not to report such a crime was the negligent conduct, then the Court cannot have subject matter jurisdiction.  The guidelines are clear that it is within the discretion of the Probation Officer—indeed the guideline plainly states it is the officer who is to make the determination—whether to report Class C violations.  Plaintiff's argument is therefore an attack on the Probation Officer's choice of how to categorize this violation and her decision not to report it.  Even if Plaintiff is correct that the Probation Officer improperly classified the conduct or improperly found that the violation is minor or that it represented a danger to society, the discretionary function exception still applies.  Other courts that have analyzed these guidelines, in other contexts, have all found that they are advisory.  United States v. Lopez, 985 F. Supp. 59, 62 (D.R.I. 1997) ("The key dispositive factor in resolving this dispute is quite simply that the policy statements of Chapter 7 of the U.S.S.G. are not mandatory.") (collecting cases); see also United States v. Booker, 543 U.S. 220, 245-46 (2005) (holding that the Court is not bound to the Sentencing Guidelines).  A court is not to look beyond the question of whether the conduct was discretionary to question the exercise of that discretion.  Therefore, because it was the Probation Officer's role to determine whether or not to report Antoniades's October 2008 disorderly persons charge, I find that the first step of the Gaubert analysis is satisfied.

   Moving to the second prong of the Gaubert Test, I must determine whether the agency's or employee's action was "of the kind that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 323.  This determination, however, is not a subjective determination of whether the employee actually made the decision for policy reasons.  Instead,

all that is required is that the action taken is "susceptible to policy analysis." Id. at 325. The Third Circuit has stated that this inquiry is fact-specific, Mitchell, 225 F.3d at 365, and that the exception only extends to protect acts that are related to the specific policy concerns of a federal agency, and not to "a mundane, administrative, garden-variety, housekeeping problem." Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997). Thus, when the two prongs are taken together, the discretionary function exception can only apply to a "permissible exercise of policy judgment" by a United States government agency or its employee. Gaubert, 499 U.S. at 326.

      Courts that have dealt with similar arguments regarding whether a probation officer made poor choices, albeit less often in the context of supervised release have found that probation officers have wide latitude in their profession. The regulations governing supervised release, parole, and probation are designed to be broad and flexible to allow probation officers the ability to develop a plan for every case, each with its own unique set of facts and circumstances. For example, the Ninth Circuit has explained that "The probation guidelines require officials to make independent policy judgments. The guidelines set out dual obligations of a probation officer to (1) protect the public, and (2) promote the rehabilitation of the probationer. Because these interests may conflict, officer discretion in balancing them is inherent." Weissich v. United States, 4 F.3d 810, 814 (9th Cir. 1993) (holding that probation officers are within their discretion to warn third-parties and therefore the Government is not liable under the FCTA). Therefore, the broad discretion afforded to probation officers is grounded in policy and is of the type that the discretionary function exception is designed to shield. Again, even if the Court were to disagree with the probation officer's use of her discretion, that cannot overcome the exception.[4] The

---

[4] This is not to suggest that there is anything in the record to suggest that Probation Officer Rush-Blossfeld acted deficiently in anyway. Indeed, it appears that she met regularly with Antoniades, had him admitted to drug and psychiatric counseling, and met with his family and acquaintances,

Government cites to a number of opinions where courts have held that probation and parole officers' decisions were discretionary functions not subject to the FTCA, even if the court disagreed with or questioned the actions of the officer.[5]  Gov't Br. at 9.  Therefore, I find that the factors of the Gaubert test are satisfied.  Because the discretionary function exception of the FTCA applies, sovereign immunity is not waived and the Court does not have subject matter jurisdiction to address Plaintiff's Complaint.

While I need not address the substance of Plaintiff's allegations, I do note that from a review of the case law and the Court's own research, it appears unlikely that the Plaintiff could have stated a viable claim even if the Court had jurisdiction.  Plaintiff claims that the Government should have warned Bellifemini about "the dangers posed directly to her as a result of her association with Antoniades."  Compl. ¶ 44.  In order to prove liability under the FTCA, Plaintiff must have established that the Probation Officer had a duty to warn Bellifemini.  To bring a tort claim against the United States, Plaintiff must show that a Government employee was negligent, while acting in the scope of her employment, and under circumstances where the United States would have been liable under local law if it were a private actor.  28 U.S.C. § 1346(b)(1).  Within this framework, Plaintiff admits that it must prove that the Probation Officer had a duty to warn and protect Bellifemini from Antoniades.  Pl. Opp. at 8.  To make this argument, Plaintiff likens the role of a probation officer to that of a physician treating a mentally disturbed individual whom the physician knows, or should know, presents a probability of danger to a third party.  Pl. Opp. at 9-10.  Yet the majority of the cases that Plaintiff herself cites

---

all in an attempt to rehabilitate Antoniades.  If Rush-Blossfeld's attempts ultimately failed, it was not because of anything she did or did not do, but because of the consequences of the poor choices Antoniades made.

[5] I repeat again, that this is not to suggest that there is anything in the record to suggest that Probation Officer Rush-Blossfeld acted deficiently in anyway.

to support her proposition—six of the seven—overwhelmingly find that there is no such duty in situations such as this.  Plaintiff's analogy between probation officers and mental health professionals is one that appears to be stretched far too thin to be convincing.  Moreover, even if there were such a duty, it is not at all clear why the Probation Officer should have known that Antoniades posed a threat to Bellifemini based on his Bloomfield arrest.  Nor is it clear what the Probation Officer could have done to prevent the unfortunate murder of Bellifemini or what effect of any warning would have ultimately had.  Bellifemini was aware already that Antoniades was on supervisory release for armed bank robbery as she herself met with the Probation Officer.  In addition, Bellifemini abused drugs with Antoniades and was "holed up" in a hotel with him for a week using heroin and cocaine.  She also knew that, while on supervised release, Antoniades had been arrested for drug possession as well as for earlier possessing drug paraphernalia.  Moreover, the Probation Officer knew that Antoniades dated a number of women, as apparently he was the victim of "sexual addiction," and that Antoniades had informed her that he had called things off with Bellifemini.  How an arrest for possession of drug paraphernalia should have suggested to the Probation Officer that Antoniades was any more dangerous than he was already known to be or how a warning to Bellifemini could have prevented her death is beyond the Court to comprehend.  These facts are undoubtedly tragic, but not every tragedy will give rise to a lawsuit.

     Plaintiff puts forth a number of separate counts, although all are related to the same conduct.  The Government has argued that because of the Court's lack of subject matter jurisdiction it cannot hear this case and that other counts are not properly pled. Plaintiff styles its 16 counts as follows: Factual Contentions (Count I); Wrongful Death under the FTCA (Counts II, III, and V); Survivorship (Count IV); Violation of 42 U.S.C. § 1983 and Unlawful Custom,

Practice, Policy, Inadequate Training (Counts VI, VII, and VIII); Survivorship Liability (Count XI); Negligent Infliction of Emotional Distress (Count X); Per Quod/Derivative Claim (Count XI); Breach of Contract (Count XII); Negligent Performance of Duties (Count XIII); Failure to Make Proper Precautions (Count XIV); Agency (Count XV); and Punitive Damages (Count XVI). Obviously a number of these, such as "Factual Contentions," are not true causes of action and many of the counts contain only bare recitals of the elements of a cause of action. The Government correctly points out that under the FTCA only the United States may be liable so any FTCA claims against the federal agencies are barred. 28 U.S.C. § 2679(b). Moreover, the Government has immunity from the remaining claims as Plaintiff has not established that there is any issue of waiver except as to the FTCA claims. In its Reply, the Government noted that Plaintiff only responded to the allegations regarding Antoniades 2008 drug paraphernalia arrest and "apparently dropped all the allegations against the Federal employees and agencies." Gov't Reply at 1. Although Plaintiff filed a sur-reply to respond to the merits of the Government's arguments regarding the 2008 arrest, she did not oppose or contradict the Government's assessment. In light of these facts, I find that because I do not have subject matter jurisdiction over the non-reporting of Antoniades 2008 arrest, this is dispositive of Plaintiff's Complaint.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(1), based upon a lack of subject matter jurisdiction. An Order will be entered consistent with this Opinion.

Dated: September 7, 2012                                     /s/   Freda L. Wolfson
                                                             Honorable Freda L. Wolfson
                                                             United States District Judge